UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

DANA SMITH and SANDRA SMITH,      )
                                   )
    Plaintiffs,                    )
                                   )
vs.                                )    CV-00-PT-2871-E
                                   )
FLEETWOOD HOMES OF                 )
GEORGIA, INC., et al.,             )
                                   )
    Defendants.                    )

ENTERED
DEC 2 2 2000

## MEMORANDUM OPINION

This cause comes to be heard upon the defendant Ronnie Smith Home Center, Inc.'s ("Ronnie Smith") Motion to Compel Arbitration and to Stay Proceedings or Alternatively, Motion to Dismiss, filed on November 3, 2000.

## UNDISPUTED FACTS

On December 29, 1998, plaintiffs Dana and Sandra Smith ("plaintiffs") purchased a home, the subject of this action, from defendant Ronnie Smith's. As part of the agreement, the plaintiffs were presented with an arbitration agreement. The plaintiffs signed the arbitration agreement.

Pursuant to the agreement, the plaintiffs are bound to arbitrate any and all claims "arising out of or in any way relating to the sale of the said mobile home and the negotiations leading up to the sale, whether in the nature of covenant, warranty, misrepresentation, recission, any breach of contract, or other tort. . . ." The agreement also requires the arbitration of all claims involving "warranty claims, service or repairs disputes, set-up or installation disputes, breach of

1

contract, misrepresentations claims, recission or revocation, loss of use, claims involving fitness for a particular purpose of merchantability, and all other claims arising out of or any way related to the sale and service of the said mobile home." It adopts the rules of the American Arbitration Association that are in effect at the time of arbitration. It provides that "all rights, privileges and responsibilities under this agreement shall expressly inure to the benefit of the manufacturer, including but not limited to enforcement of warranties, whether express or implied." The agreement states that it is a part of the contract of sale. The agreement is silent with respect to which party is to pay the filing fees and costs of arbitration.

The plaintiffs have a high school education. They have received no legal training. They argue that when they signed the arbitration agreement, they did not understand its terms.

## FACTS THAT MAY BE IN DISPUTE

The plaintiffs claim that before the sales representative presented them with the arbitration agreement, he told them that they would not understand its language, but that the agreement meant that they would submit any dispute about the condition of the home or its repair to a third party. According to the plaintiffs, he also told them that they could still file suit in a court if they did not like the arbitrator's decision or if the arbitrator could not resolve the dispute. The plaintiffs claim that after they had reviewed the arbitration agreement and, like the sales representative had predicted, could not understand it, they asked the sales representative for additional clarification. They allege that the sales representative repeated his initial explanation. The plaintiffs claim that they relied on the representation of the sales representative because they considered him to be experienced and knowledgeable about arbitration agreements whereas they had never before seen one. Ronnie Smith's has not, in its motion, supplied this court with its own statement of disputed or undisputed facts.

**ARGUMENT**

In its motion to compel arbitration, Ronnie Smith's argues simply that the arbitration agreement is enforceable under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), because it is a written provision in a contract evidencing a transaction involving interstate commerce. Ronnie Smith's argues that any doubts concerning the scope of the arbitration clause should be resolved in favor of arbitration, citing Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1 (1983). Ronnie Smith's asserts that since all of the plaintiffs' claims against the defendant are subject to the arbitration agreement, the plaintiffs' only available remedy is arbitration, and this court should therefore dismiss the plaintiffs' claims against it with prejudice and compel arbitration.

The plaintiffs' opposition to Ronnie Smith's motion is much more extensive. They argue that the arbitration agreement is unenforceable because they were fraudulently induced into signing it and because it is unconscionable. They argue additionally that the agreement should be reformed because of a mistake. The court will address each argument individually.

Fraudulent inducement

The plaintiffs argue that, when the Ronnie Smith's sales representative represented to them (twice) that they could bring an action in court if they did not like the arbitrator's judgment or if the arbitrator could not resolve the dispute, he made a misrepresentation of a material fact upon which the plaintiffs relied when they signed the agreement. The plaintiffs argue that claims of fraud in the inducement of an arbitration agreement should be decided by a trial court, citing Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395 (1967); Investment Management & Research, Inc. v. Hamilton, 727 So.2d 71, 78 (Ala. 1999). The plaintiffs acknowledge that Ronnie Smith's ordinarily has no duty to disclose or explain the

3

arbitration agreement on its own, but argue that, once they asked about the agreement, Ronnie Smith's had a duty to not misrepresent its meaning.

Ronnie Smith's argues that the alleged misrepresentation is not sufficient to allow the plaintiffs to avoid being held to the plain language of the arbitration agreement. It notes that the plaintiffs had an opportunity to read the agreement and that they chose to sign it. Ronnie Smith's cites Foremost Insurance Co. v. Parham, 693 So. 2d 409, 421-423 (Ala. 1997), in which the court refused to invalidate a contract for fraud, even though it found that there was sufficient evidence for a jury to find that the plaintiffs had been defrauded. The court concluded that, while the defendant's representative's misrepresentations of the contract's terms could support a finding of fraud, the plaintiff's reliance upon the statements was not "justifiable" in light of the plaintiff's opportunity and ability to read and understand the contract. Id. at 421. The court found that the defendant's representative's statements did not allow the plaintiff to ignore the plain terms of the contract. Id. Ronnie Smith's notes that the plaintiffs have not identified a specific part of the agreement that they found confusing or ambiguous and argues that they should not be allowed to claim broadly that the entire agreement was ambiguous. Further, Ronnie Smith's points to the arbitration agreement's statement that disputes would be resolved "solely" by an arbitrator, and contends that, by relying on the sales representative's alleged statements, the plaintiffs simply chose to ignore the plain terms of the agreement.

Unconscionability

The plaintiffs argue that this court should not enforce the arbitration provision because it is unconscionable. They assert that, while Alabama law does not contain a specific standard for unconscionability, case law provides five factors to help a court evaluate a contractual provision: (1) One party was unsophisticated/uneducated; (2) That party lacked meaningful choice in the

matter; (3) The contractual terms are unreasonably favorable to one party; (4) There was unequal bargaining power between the parties; and (5) The contract contains oppressive, one-sided, or patently unfair terms. Layne v. Garner, 612 So.2d 404, 408 (Ala. 1992).

The plaintiffs argue that all five factors are present in this case. They contend that they were unsophisticated and uneducated because they did not possess a degree in excess of a high school diploma and had never seen an arbitration agreement previously. They also argue that, by virtue of the lack of sophistication that forced them to rely upon the representations of the salesman, they did not have a meaningful opportunity to choose whether to sign the arbitration provision. The plaintiffs argue that they believed that they would not be able to purchase the home if they did not sign the agreement. For this reason, as well as because of their limited financial resources, they argue that the bargaining power was unequally distributed between the parties.[1]

The plaintiffs also argue that, when viewed in the light of their lack of education and experience, limited financial resources, and complete reliance upon the representations of the Ronnie Smith's salesman, the terms of the arbitration agreement are "oppressive, one-sided, and patently unfair." Because the arbitration provision does not specify which party pays the costs and fees of the arbitration, the plaintiffs can only assume that they will be burdened with the filing fee of $3250.00, a case service fee of $750.00, and at least one half of the cost of each of the panel of three arbitrators, pursuant to the rules of the American Arbitration Association, which the arbitration agreement specifically adopts. The plaintiffs contend that, because of their

---

[1] Although the plaintiffs believe that it is reasonable to infer that Ronnie Smith's possessed much greater bargaining power than they possessed, they request that this court grant them the opportunity to conduct discovery on this issue and submit additional evidence.

5

limited financial resources– they assert that at this moment they cannot afford even to make necessary repairs to the home– they will be effectively prohibited from bringing their action against Ronnie Smith's. Thus, the plaintiffs argue, Ronnie Smith's has erected "an impenetrable shield against liability for its conduct simply because of the limited financial capacity" of its customers. The plaintiffs acknowledge that limited financial resources are not, by themselves, justification for refusing to enforce an arbitration agreement. However, the plaintiffs maintain that the totality of the circumstances in their case show deceptive conduct and unconscionable contractual provisions that are subject to invalidation through state law.

     Ronnie Smith's replies that the plaintiffs have not presented sufficient evidence to allow this court to find that they were unsophisticated or uneducated. Ronnie Smith's asserts that the plaintiffs' high school diplomas clearly indicate their ability to read and understand the arbitration provision. It further argues that the plaintiffs have failed to show enough evidence of the remaining unconscionability factors because they have not shown that they actually inquired as to whether their signing the arbitration agreement was necessary to purchase the home or to obtain financing for it. It contends that the plaintiffs have not presented any evidence that the agreement's terms are unreasonably favorable to one party, and argues that, in reality, the agreement's provisions are equally applicable to both it and the plaintiff. Ronnie Smith's also argues that because the plaintiffs have not submitted any evidence that they could not have purchased a similar home from another dealer without signing an arbitration agreement, they cannot prove that the agreement was unconscionable. Finally, Ronnie Smith's argues that the plaintiffs have not shown that the arbitration agreement is oppressive, one-sided, or patently unfair. Specifically, it contends that if the plaintiffs would simply specify the amount that they

6

are seeking, the arbitration filing fee will be reduced to $1,250.[2] It further argues that a plaintiff's poverty, without more, is not a sufficient reason to refuse to enforce an otherwise valid arbitration agreement. Ronnie Smith's also notes that Rule 51 of the American Arbitration Association rules provides for a deferral or reduction of arbitration fees if the plaintiffs can demonstrate extreme hardship, and that, after the arbitration proceedings are completed, the arbitrator could assess the fees, expenses, and compensation against Ronnie Smith's if the plaintiffs prevail.

Mistake

The plaintiffs argue that their assent to the terms of the arbitration agreement were based upon a mistake. Therefore, they ask that this court, at the very least, reform the arbitration agreement so that it will reflect their true intentions. The provision of the Alabama Code that provides for the reformation of a contract because of a mistake is section 35-4-153:

> "When, through fraud, or a mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a deed, mortgage or other conveyance does not truly express the intention of the parties, it may be revised by a court on the application of the party aggrieved so as to express that intention, insofar as this can be done without prejudice to rights acquired by third persons in good faith and for value."

The plaintiffs argue that the facts of the case show that their assent to the arbitration provision was given through either fraudulent misrepresentation or a mutual mistake. They assert that the Ronnie Smith's sales representative who assured them that they could still bring an action in court was either mistaken as to the terms of the arbitration agreement, which would imply a mutual mistake, or deliberately deceived them, which would imply either fraud or a

---

[2] Ronnie Smith's admits that it assumes that the plaintiffs would specify a claim of between $75,000 and $150,000 in order to receive the reduced filing fee.

7

unilateral mistake. They emphasize that they did not have a meaningful opportunity to read the agreement because they did not understand its language. They also argue that, even if this court were to find that they did have a meaningful opportunity to read the agreement, negligence is not a bar to a claim of reformation, citing Clipper v. Gordon, 44 So. 2d 576, 578 (Ala. 1950)("Mutual mistakes are always the result of some negligence, but that will not defeat reformation where it is plain that there was no fraud or overreaching by anybody . . . . mistake always presupposes negligence."); Ballentine v. Bradley, 191 So. 618, 621-622 (Ala. 1939)("Even a clearly established negligence may not, of itself, be sufficient ground for refusing relief, if it appears that the other party has not been prejudiced thereby . . . ."); and Ex parte Metropolitan Life Insurance Co., 98 So. 2d 20, 28-29 (Ala. 1957)("In many . . . cases of mistake . . . there is some element of lack of care, but . . . if the mistake is mutual and each party has been careless . . . there seems to be no reason why relief should not be granted, unless this is made inequitable by some change of position . . . .").

    Ronnie Smith's argues that reformation of the agreement would be inappropriate. It contends that the plaintiffs have failed to present any evidence of mutual mistake or of fraud. Ronnie Smith's maintains that, unless this court finds that the agreement is ambiguous, the clear meaning of its terms must be presumed to express the intent of the parties, citing Federal Land Bank v. Terra Resources, Inc., 373 So.2d 314, 319-320 (Ala. 1979). It argues that this court should require a high degree of proof of mistake before reforming the contract, and asserts that the plaintiffs have not provided the necessary proof, citing Clemons v. Mallett, 445 So. 2d 276 (Ala. 1984); Gayle v. Hudson, 10 Ala. 116, 128 (1846). It further notes that the arbitration agreement in question is the same agreement that this court enforced in Cunningham, et al. v. Ronnie Smith's Mobile Home Center, et al., CV-99-PT-2605-E. Finally, Ronnie Smith's argues

that, as a matter of law, the agreement should not be reformed for fraud or unilateral mistake because in order to be defrauded by the sales representative's statements, the plaintiffs would have had to ignore the clear language of the arbitration agreement.

## CONCLUSION

The court concludes that the arbitration provisions are enforceable subject to conditions to be equitably imposed by the court. Those conditions are as follows:

All ~~Both~~ defendants will, within 15 days, instigate the arbitration proceedings and will remit to the appropriate arbitrators all fees and costs attendant to the arbitration process. The defendants will further agree that the plaintiffs will be entitled, through arbitration, to recover all amounts appropriately due under state or federal law. The fees and costs to be remitted by the defendants will not include attorney fees of the plaintiffs unless and until any such attorney fees may be awarded in arbitration. The defendants will not be allowed to recover any costs or fees unless both the arbitrator(s) and this court determine that the plaintiffs' claims are frivolous. The court will reserve jurisdiction to cause compliance with the arbitration proceedings by all parties. The parties will report to this court, within 25 days, the status of the arbitration process.

This 21st day of December 2000.

/s/ Robert B. Propst
ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE